IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH DIVISION

| | | |
|---|---|---|
| MACARTON N. PIERRE, | ) | 2:23-CV-02036-RAL |
| Plaintiff | ) | |
| vs. | ) | RICHARD A. LANZILLO |
| | ) | Chief United States Magistrate Judge |
| C. GREENAWALT, et al., | ) | MEMORANDUM OPINION ON |
| Defendants | ) | DEFENDANTS' MOTION FOR |
| | ) | SUMMARY JUDGMENT, OR, IN THE |
| | ) | ALTERNATIVE, MOTION TO DISMISS |
| | ) | |
| | ) | IN RE: ECF NO. 46 |

## I.    Introduction

Plaintiff Macarton Pierre, an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), commenced this action against four officials employed at the State Correctional Institution at Greene ("SCI-Greene"), where Pierre was previously incarcerated: C. Greenawalt the Grievance Coordinator, Warden Zaken, Sgt. George, and Administrative Officer J.M. Siebert. ECF No. 1-2.[1] He subsequently filed an amended complaint naming Warden Buzas and Unit Manager Dick as additional defendants. ECF No. 2-2.[2] The complaint alleges

---

[1] Pierre brought this action in the Court of Common Pleas of Greene County on October 24, 2023. ECF No. 1-2. Defendants removed the action to this Court on December 5, 2023. ECF No. 2.

[2] Pierre also sued Dr. Eric Chang, an employee of Wellpath, LLC. In a January 10, 2025 Order, the Court ordered this action stayed pursuant to the automatic stay in the Wellpath bankruptcy proceedings. ECF No. 29; see In re Wellpath Holdings, Inc., No. 24-90533 (Bankr. S.D. Tex.). The Court subsequently ordered this case administratively closed pending relief from or lifting of the bankruptcy stay. ECF No. 39. On June 4, 2025, the Court lifted its stay and ordered this matter

Defendants Greenawalt, Siebert, and George retaliated against Pierre for filing lawsuits and grievances by depriving him access to the courts and law library, the right to counsel, and freedom of speech and association, violating his rights under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments. *Id.*, p. 9. Pierre asserts the same constitutional violations against Defendants Zaken, Buzas, and Dick based on their "retaliatory customs, policies, and practices" and "excessive communication bans." *Id.* For relief, he seeks a declaration that Defendants' actions violated his constitutional rights, an injunction ending the communication ban for disciplinary custody status inmates, and damages. *Id.*, p. 10.

Defendants now move to dismiss the amended complaint, or, in the alternative, for summary judgment. ECF No. 46.[3] They request summary judgment based on the affirmative defense that Pierre failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). As to their dismissal motion, Defendants contend Pierre's official capacity claims are barred by the Eleventh Amendment, and further argue Pierre fails to plead sufficient factual allegations to state a claim for relief.

Pierre filed a Brief in Opposition to Defendants' motion accompanied by a Responsive Concise Statement of Material Facts and supporting exhibits. ECF Nos.

---

reopened. ECF No. 41. On July 9, 2025, the Court severed Pierre's claims against Defendant Chang from the claims against the Corrections Defendants and terminated Defendant Chang from this case. ECF No. 44.

[3] The motion is accompanied by a Concise Statement of Material Facts, supporting Brief, and Appendix of Exhibits. ECF Nos. 47, 48, and 49.

55 and 56.[4] The matter is now ripe for disposition. For the reasons discussed herein, Defendants' motion for summary judgment will be granted.[5]

## II.    Factual Background[6]

Pierre is currently confined at SCI-Fayette. ECF No. 55, p. 1.[7] In August 2023, Pierre was transferred from SCI-Albion to SCI-Greene, where the events underlying

---

[4] Local Rule 56 requires non-moving parties to a motion for summary judgment to file a responsive concise statement in which they must: respond to each numbered paragraph in the movant's concise statement; admit or deny the facts contained in the movant's concise statement; set forth the basis for denial of any asserted fact with appropriate citation to the record; and set forth, in separately numbered paragraphs, any additional material facts upon which the party relies in opposition to the motion. *See* LCvR 56(C)(1). Courts in the Western District of Pennsylvania require strict compliance with the provisions of Local Rule 56. *See, e.g., Coleman v. Tice*, 2018 WL 5724125, at *2 n.3 (W.D. Pa. Oct. 10, 2018), *report and recommendation adopted*, 2018 WL 5722316 (W.D. Pa. Nov. 1, 2018); *First Guard Ins. Co. v. Bloom Services, Inc.*, 2018 WL 949224, at *2–3 (W.D. Pa. Feb. 16, 2018); *Hughes v. Allegheny Cnty. Airport Auth.*, 2017 WL 2880875, at *2 (W.D. Pa. July 6, 2017), *aff'd*, 728 F. App'x 140 (3d Cir. 2018). This strict compliance applies equally to pro se plaintiffs and those represented by counsel. *See, e.g., Peay v. Sager*, 2022 WL 565391, at *1–2 (W.D. Pa. Feb. 1, 2022), *report and recommendation adopted*, 2022 WL 562936 (W.D. Pa. Feb. 24, 2022).

"A non-moving party faces severe consequences for not properly responding to a moving party's concise statement." *Hughes*, 2017 WL 2880875, at *1. All facts "set forth in the moving party's Concise Statement of Material Facts . . . which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." LCvR 56(E). Accordingly, the Court will deem admitted any properly supported statement of material fact in Defendants' concise statement to which Pierre has made a contrary assertion without record support. However, the Court will consider any contrary facts apparent from admissible evidence in the record to the extent such evidence may support Pierre's claims or contradict Defendants' assertions of fact. *See Peay*, 2022 WL 565391, at *2. Finally, because Defendants did not file a reply to Pierre's assertions of fact, the Court will also deem admitted any properly supported statement of material fact in Pierre's responsive concise statement. *See* LCvR 56(E).

[5] All parties have consented to the jurisdiction of a United States Magistrate Judge in these proceedings under 28 U.S.C. §636(c).

[6] The following facts derive primarily from the parties' Local Rule 56(B) and (C) Concise Statement of Material Facts and Responsive Concise Statement and accompanying exhibits, as well as Pierre's verified complaint.

[7] As Pierre is no longer incarcerated at SCI-Greene, no claim for injunctive relief is available in this action. *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) (prisoner's transfer or release from the facility complained of generally moots his claims for injunctive relief because he is no longer subject to the challenged conditions). The Court finds no reasonable expectation, and declines to further speculate, that Pierre will once again be incarcerated at SCI-Greene under the same conditions. *See Washington*, 2022 WL 1782509, at *4; *Rivera v. Luquis*, 2024 WL 4609574, at *3 (E.D. Pa. Oct. 29,

this action took place. *See generally* ECF No. 2-2. The crux of his pleading is that Defendants retaliated against him for complaining about prison conditions by denying him access to the law library, preventing him from communicating with his family, counsel, and the courts, and interfering with his grievance filings. *See id.*

According to his complaint, on August 22, 2023, Pierre appeared via video in the Court of Common Pleas of Erie County for a bond hearing and arraignment on a staff assault charge. ECF No. 2-2, p. 6. Following the hearing, Pierre completed an application for counsel, but C. Greenawalt refused to fax it to the court. *Id.* As a result, he was without counsel for his October 3, 2023 preliminary hearing. *Id.* He further contends Defendant Siebert terminated the preliminary hearing and issued a falsified misconduct report. *Id.* Pierre also complains Greenawalt "refused to put in [his] grievance appeals of guard brutality to SCI-Albion." *Id.*[8]

In September 2023, Pierre asked to call his family because he wanted to obtain counsel for the staff assault charge. *Id.*, p. 5. He also requested to call his appellate counsel regarding an upcoming PCRA filing deadline. *Id.*[9] Unit Manager Dick and

---

2024). Additionally, Pierre's complaint fails to provide a proper basis for declaratory relief because "even if the defendants violated his rights in the past, he is not entitled to a declaration to that effect." *Naranjo v. City of Philadelphia*, 626 F. App'x 353, 356 n.1 (3d Cir. 2015); *see Washington*, 2022 WL 1782509, at * 4 ("declaratory judgment is unavailable 'solely to adjudicate past conduct' or 'to proclaim that one party is liable to another'" (citation omitted)); *Donahue v. Super. Ct. of Pa.*, 2019 WL 913812, at *3 (M.D. Pa. Feb. 25, 2019) ("[d]eclaratory judgment is not meant to adjudicate alleged past unlawful activity"). Accordingly, the only remaining claim for relief in this action is Pierre's claim for money damages against Defendants in their individual capacities.

[8] *See* ECF No. 2-2, p. 19 (September 6, 2023 correspondence to Pierre from DOC explaining that the grievance response was not complete because his abuse allegation was still under investigation at SCI-Albion, and he could not file an appeal until he received the grievance response).

[9] *See* ECF No. 2-2, p. 17 (October 10, 2023 letter to Pierre from Attorney Leonard Gryskewicz, Jr., explaining that counsel did not represent Pierre in the case he wished to file a PCRA petition in, and further explaining that because his sentence in that case was set to expire on October, 21, 2023, and

Deputy Warden Buzas stated Pierre was not permitted contact visits or phone calls while on disciplinary custody status. *Id.* On September 5, 2023, Pierre submitted an "Inmate's Request To Staff Member," Form DC-135A, to Unit Manager Dick, requesting permission to call his family and counsel. *Id.*, p. 12. Staff responded: "No phone calls on DC time." *Id.* On October 5, 2023, Pierre submitted an "Inmate's Request To Staff Member" form to Warden Zaken regarding his phone call request. *Id.*, p. 15. Zaken responded the following day: "Requests for calls go through your unit team and PRC. Your attorney can request a legal call by contacting the superintendent's assistants." *Id.*

Lastly, Pierre asserts Defendant George denied his requests to use the law library for five weeks from August 12 to September 16, 2023. *Id.*, p. 7; *see id.*, pp. 21–25 ("Inmate's Request To Staff Member" forms requesting library access). He further contends "prison officials falsified a report stating the plaintiff signed up but refused." *Id.*, p. 7.

The record documents three grievances Pierre filed during the relevant time period that relate to the allegations in the complaint. On September 14, 2023, Pierre filed Grievance # 1052327 stating he was denied access to the law library from September 2–14, 2023. ECF No. 49-2, p. 5. He stated he "spoke to officers as they were doing rounds on multiple occasions [and] spoke to Unit Mgr. Dick about it once,"

---

there would be "no possible opportunity for the Court to schedule a hearing and issue a ruling prior to [that date], even if you were able to file a PCRA petition today," Pierre would thus be ineligible for relief under the PCRA).

and requested he be put on the library list every week.  *Id.*  The grievance officer

denied Pierre's request, stating:

> According to the law library log you were signed up twice
> from 9/2/23–9/14/23.  However, documentation states that
> you refused both times to attend the law library.  You have
> since attended the law library on 9/17/23, 9/24/23, and
> 10/7/23.  There is no evidence showing that you are being
> denied or were denied your opportunity for the law library.

*Id.*, p. 4.  Pierre filed an appeal to the facility manager urging "[t]here is plenty of

evidence I was deprived of access to the courts," and cited the following: 1) he put in

library requests for eight weeks and was only permitted to go three times; 2)

Greenawalt did not fax his application for counsel; 3) Siebert terminated his

preliminary hearing; and 4) the phone ban prevented him from contacting counsel.

*Id.*, p. 3.  The facility manager upheld the initial response and stated: "Issues not

presented in your initial grievance will not be reviewed at this level." *Id.*, p. 1.  Pierre

unsuccessfully appealed Grievance # 1052327 to final review.  ECF No. 49-5, ¶ 19;

ECF No. 55-9, p. 6.

On October 16, 2023, Pierre filed Grievance # 1057274 complaining he did not

receive a form to file a second level of appeal of a misconduct charge.  ECF No. 49-3,

p. 2.  Pierre requested he be provided the appeal form, "or I will be filing a suit for

compensation for denying & depriving me of my due process." *Id.*  The grievance

officer determined his request was resolved, stating:

> Forms are not sent to you; any forms you may need are
> available through your Unit Manager or housing unit
> officers.  Additionally, an appeal to the Facility Manager
> can be accomplished through a DC135A Request to Staff.
> Additionally, your appeal to the Facility Manager (second
> level) was reviewed on October 23, 2023 and upheld.

*Id.*, p. 1. Pierre did not appeal. ECF No. 49-5, ¶ 19.

Finally, on November 2, 2023, Pierre filed Grievance # 1059414 seeking punitive and compensatory damages for alleged retaliation and denial of access to the courts and counsel. ECF No. 49-4, p. 5. He specifically claimed: 1) the phone ban policy prevented him from contacting counsel, and he was now time-barred from filing a PCRA petition; 2) he was "deprived by Greenawalt of [his] right to counsel"; and 3) "deprived of a preliminary hearing . . . by Siebert." *Id.* The grievance officer rejected his request for failure to comply with DC-ADM 804 because "[g]rievances based upon different events must be presented separately." *Id.*, p. 4. Pierre filed an appeal to the facility manager urging that it was "necessary . . . to combine the issues to support my claim," and requested his grievance be remanded to the grievance coordinator for an answer. *Id.*, p. 3. The facility manager upheld the rejection, stating: "Your grievance contained multiple events/issues that would need to be addressed/assigned separately in order to provide you with appropriate grievance responses." *Id.*, p. 1. Pierre unsuccessfully appealed Grievance # 1059414 to final review. ECF No. 49-5, ¶ 19; ECF No. 55-8, p. 6.

## III.    Standard of Review

Federal Rule of Civil Procedure 56(a) requires the district court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under this standard "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Loc. 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287–88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. *Id.*; *see Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (nonmovant cannot "rely merely upon bare assertions, conclusory allegations or suspicions"). Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories, or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The

Rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Finally, where, like here, a party is proceeding pro se, the court has an obligation to construe the pro se party's filings "liberally." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "However, despite this liberal interpretation, the same standards for summary judgment apply to *pro se* litigants," *Watson v. Phila. Hous. Auth.*, 629 F. Supp. 2d 481, 485 (E.D. Pa. 2009), and "a pro se plaintiff is not relieved of his obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment," *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation omitted); *see Winfield v. Mazurkiewicz*, 2012 WL 4343176, at *1 (W.D. Pa. Sept. 21, 2012). In other words, the party opposing summary judgment, whether or not pro se, "must present evidence, through affidavits, depositions, or admissions on file, to show that there is a genuine issue for trial." *Watson*, 629 F. Supp. 2d at 485.

## IV.    Discussion and Analysis

Defendants seek summary judgment based on Pierre's failure to properly exhaust his administrative remedies before initiating this lawsuit. In support of this argument, they submit Pierre's grievance record concerning the matters raised in this action and the declaration of Michael "Skip" Bell, a Grievance Review Officer in the

Secretary's Office of Inmate Grievances and Appeals ("SOIGA").  *See* ECF No. 49.[10]

Because exhaustion is a "prerequisite to an inmate bringing suit," it is a "threshold

issue that courts must address to determine whether litigation is being conducted in

the right forum at the right time." *Rinaldi v. United States*, 904 F.3d 257, 265 (3d

Cir. 2018) (citation omitted).

The PLRA requires a prisoner to exhaust any available administrative

remedies before he may bring an action under 42 U.S.C. § 1983 challenging the

conditions of his confinement.  42 U.S.C. § 1997e(a).  This exhaustion requirement

applies to all claims relating to prison life which do not implicate the duration of the

prisoner's sentence. *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Further, the statute

requires "proper exhaustion," meaning that a prisoner's completion of the

administrative review process must satisfy the applicable procedural rules of the

prison's grievance system. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*,

548 U.S. 81, 93 (2006); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020);

*Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004) (determining whether "a prisoner

has 'properly' exhausted a claim . . . is made by evaluating the prisoner's compliance

---

[10] To satisfy their burden of production on their exhaustion affirmative defense at the summary judgment stage, Defendants must produce evidence demonstrating their entitlement to judgment on the defense as a matter of law.  Fed. R. Civ. P. 56(c)(1)(A).  Typically, the most effective means to do so is for the defendant to produce the plaintiff's relevant grievance record relating to the claim(s) asserted in the lawsuit. *See Brown v. Smith*, 2021 WL 4429847, at *5 (W.D. Pa. Sept. 27, 2021), *aff'd*, 2022 WL 2383609 (3d Cir. July 1, 2022).  Where the plaintiff has failed to file a grievance concerning a claim, missed step in the grievance process, or otherwise failed to satisfy the procedural requirements of DC-ADM 804, the defendant should provide a properly authenticated business record evidencing the omission or an affidavit from a person with knowledge affirming factually the plaintiff's failure to properly exhaust. *See id.* (citing Fed. R. Civ. P. 56(c)(4)); *e.g., Muhammad v. Sec'y Pa. Dep't of Corr.*, 621 F. App'x 725, 727 (3d Cir. 2015) (affidavit attesting to plaintiff's failure to appeal to SOIGA).

with the prison's administrative regulations governing inmate grievances").[11]  Thus, "prison grievance procedures supply the yardstick" for the district court to measure procedural default.  *Spruill*, 372 F.3d at 230–31.  A procedurally defective administrative grievance, even if pursued to final review, precludes action in federal court. *Fennell v. Cambria Cnty. Prison*, 607 F. App'x 145, 149 (3d Cir. 2015).  Failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be pleaded and proven by defendants. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Pennsylvania's prison system requires inmates to satisfy a three-step grievance and appeals process, set forth in DC-ADM 804. First, "within 15 working days after the event upon which the claim is based," the prisoner must submit a written grievance for review by the Facility Grievance Coordinator ("FGC") or the FGC's designee using the appropriate form.  DC-ADM 804 § 1.A.8; *see also Lewis v. Sutherland*, 2024 WL 6957719, at *5 (W.D. Pa. Oct. 18, 2024).  The FGC/designee must provide an initial review response to the inmate "within 15 working days from the date the grievance was entered into the Automated Inmate Grievance Tracking System."  DC-ADM 804 § 1.C.5.g.  Second, "if the FGC/designee has rejected the grievance or the inmate is otherwise dissatisfied with the initial review response," *Lewis*, 2024 WL 6957719, at *5, the inmate may appeal to the prison's Facility Manager "within 15 working days from the date" the inmate receives "the initial

---

[11] This requirement serves to protect "administrative agency authority" over the matter by giving the agency "an opportunity to correct its own mistakes . . . before it is haled into federal court" and "discourages 'disregard of [the agency's] procedures.'" *Woodford*, 548 U.S. at 89 (alteration in original) (citations omitted).

11

review response/rejection," DC-ADM 804 § 2.A.1.a.  The Facility Manager must then notify the inmate in writing "of his/her decision within 15 working days of receiving the appeal." *Id.*, § 2.A.2.d(1).  Finally, "[a]ny inmate who is dissatisfied with the disposition of an appeal from the Facility Manager" may appeal to SOIGA "within 15 working days from the date of the Facility Manager['s] decision." *Id.*, § 2.B.1.b.  All three stages of review must be completed before a grievance is deemed administratively exhausted for purposes of the PLRA.  *See Booth v. Churner*, 206 F.3d 289, 292 n.2, 299 (3d Cir. 2000).

DC-ADM 804 contains several procedural rules that impact Pierre's claims in the instant case.  The first mandates that an inmate who "desires compensation or other legal relief normally available from a court" must "request the relief with specificity in his/her initial grievance." *Wright v. Sauers*, 2017 WL 3731957, at *7 (W.D. Pa. Aug. 30, 2017) (quoting *Spruill*, 372 F.3d at 234), *aff'd*, 729 F. App'x 225 (3d Cir. 2018); *see Hobson v. Tiller*, 2021 WL 2191282, at *8 (W.D. Pa. May 6, 2021) (the inmate must make a clear request for monetary compensation); DC-ADM 804 § 1.A.11.d.  The second requires the inmate to "identify all persons relevant to his claim" in the grievance. *Lewis*, 2024 WL 6957719, at *6 (emphasis omitted); *see Stone v. Johnson*, 713 F. App'x 103, 105 (3d Cir. 2017) (the inmate must identify the individuals involved in the event with enough particularity to give prison officials "a fair opportunity" to address the grievance); DC-ADM 804 § 1.A.11.b.  Failure to identify a defendant or request a form of legal relief (including monetary damages) in a grievance precludes the inmate from suing the unnamed defendant or seeking that

12

form of relief in a federal lawsuit, even if the inmate appealed that grievance to the Secretary's Office for final review. *See, e.g.*, *Wright*, 2017 WL 3731957, at *7 (noting that a grievance must be fully exhausted to final review *and* "properly exhausted" with respect to remedy); *Roten v. Little*, 2024 WL 1514182, at *7 (W.D. Pa. Apr. 8, 2024) ("The failure to identify . . . Defendants . . . in the[] relevant . . . grievances constitutes a 'procedural default,' and does not amount to 'proper exhaustion.'"). Third, "[a]ny grievance based on separate events must be presented separately, unless it is necessary to combine the issues to support the claim." DC-ADM 804 § 1.A.14. Fourth, "[o]nly an issue that was raised for initial review, determination of frivolousness, and/or rejection may be appealed" to the Facility Manager. *Id.*, § 2.A.1.c. Relatedly, "[o]nly issues raised in the initial grievance and/or appealed to the Facility Manager may be appealed to Final Review." *Id.*, § 2.B.1.b. Lastly, the inmate is responsible for making copies of his grievance documents, *id.*, §§ 1.A.26, 2.A.1.f, 2.B.1.l, and must submit with his written appeal to SOIGA copies of the initial grievance, the initial review response, the appeal to the Facility Manager, and the Facility Manager's decision, *id.*, § 2.B.1.j. *See Brown v. Wetzel*, 2020 WL 1249081, at *5 (W.D. Pa. Mar. 16, 2020) (inmate's failure to provide SOIGA copy of required document "did not comply with the applicable grievance appeals procedures, and, as a result, [inmate's grievance] was not exhausted and cannot support any claim against [defendant] in this action").

A review of the record indicates Pierre failed to properly exhaust his claims against Defendants.

13

First, there is no question that Pierre failed to identify Defendant George in any of the three relevant grievances. This omission "constitutes a failure to properly exhaust his administrative remedies under the PLRA," *Williams v. Pa. Dep't of Corr.*, 146 F. App'x 554, 557 (3d Cir. 2005), and George is entitled to summary judgment on this basis, *see Lewis*, 2024 WL 6957719, at *6 (granting summary judgment in favor of defendants who were not identified in any relevant grievance).

Second, as to his claim regarding law library time, Pierre's failure to request monetary damages in Grievance # 1052327 precludes him from seeking such relief in this suit. *See, e.g.*, *Wright*, 729 F. App'x at 227 (finding lack of proper exhaustion where plaintiff failed to set forth desired monetary relief on initial grievance form); *Hobson*, 2021 WL 2191282, at *8 (collecting cases). Additionally, with the exception of Unit Manager Dick, Grievance # 1052327 fails to identify the individuals allegedly responsible for denying Pierre library time. As such, Pierre has defaulted this claim as to the other Corrections Defendants. *See Preziosi v. Morris*, 2022 WL 3586667, at *6 (W.D. Pa. Aug. 22, 2022) (holding that inmate failed to exhaust against certain defendants where his grievance "failed to provide enough information indicating they were involved in the events about which he was complaining"). Further, though Pierre pursued Grievance # 1052327 to final appeal, that appeal was dismissed for failing to provide the proper documentation for review. *See* ECF No. 55-9, p. 6; *e.g.*, *Mack v. Klopotoski*, 540 F. App'x 108 (3d Cir. 2013) (affirming summary judgment on exhaustion where inmate failed to provide copies of required documents to SOIGA). For all of these reasons, Pierre has failed to properly exhaust his law library claim.

The Court next turns to Pierre's claims for retaliation and denial of access to the courts and counsel. He raised these issues in Grievance # 1059414 and requested damages. *See* ECF No. 49-4, p. 5 (contending the phone ban policy prevented him from timely filing a PCRA petition, Greenawalt deprived him of his right to counsel, and Siebert deprived him a preliminary hearing). Although Pierre pursued Grievance # 1059414 through final appeal to SOIGA, he nevertheless failed to properly exhaust this grievance because he did not comply with the prison's procedural rules. *See id.*, pp. 1, 4 (rejection form and appeal response rejecting grievance for failing to comply with DC-ADM 804 provision requiring grievances based on separate events to be presented separately); ECF No. 55-8, p. 6 (dismissing final appeal for failing to comply with DC-ADM 804 provision providing that inmate must submit copies of "required documentation for a proper appeal to final review"). While Pierre contends it was necessary to combine the issues supporting his claim, "they are distinct incidents on separate dates and should have been grieved separately under DOC policy." *Baez v. Froehlich*, 2021 WL 4341191, at *10 (W.D. Pa. Sept. 23, 2021); *see Frazier v. SCI Med. Dispensary Dr.*, 391 F. App'x 128, 130 (3d Cir. 2010) (finding failure to properly exhaust where "grievance contained three separate issues, violating the prison's reasonable administrative procedure requiring that each claim be presented separately"); *Helms v. Sorber*, 2026 WL 358286, at *10 (E.D. Pa. Feb. 9, 2026) (same, collecting cases).[12] That Pierre raised similar retaliation and

---

[12] Additionally, pursuant to DC-ADM 804 § 1.A.8, Pierre was required to file a grievance pertaining to each of these incidents within fifteen working days of the underlying event. *See id.*, § 1.A.11.a ("The statement of facts shall include the date, approximate time, and location of the event(s) that gave rise to the grievance."); *see also Lyons v. Salamon*, 2025 WL 2658403, at *7 (M.D. Pa. July 31, 2025) ("for

access to courts/counsel arguments in his appeal to the facility manager for Grievance # 1052327 (concerning law library time) is of no moment because such efforts were also procedurally improper. *See* ECF No. 49-2, p. 3 (appeal to facility manager); *id.*, p. 1 (facility manager response stating: "Issues not presented in your initial grievance will not be reviewed at this level."); DC-ADM 804 § 2.A.1.c ("Only an issue that was raised for initial review, determination of frivolousness, and/or rejection may be appealed [to the Facility Manager."); *Woodford*, 548 U.S. at 83 ("procedurally defective administrative grievance or appeal" does not satisfy the PLRA's exhaustion requirement). Accordingly, Pierre failed to properly exhaust his administrative remedies as to his claims for retaliation and access to the courts and counsel.

Lastly, to the extent that Grievance # 1057274 relates to any claim in the amended complaint, Pierre failed to appeal this grievance and thus did not exhaust his administrative remedies. *See Booth*, 206 F.3d at 299. Alternatively, to the extent that Pierre was not required to appeal a favorable outcome, *see Diaz v. Palakovich*, 448 F. App'x 211, 216 (3d Cir. 2011), his failure to request monetary damages in Grievance # 1057274 precludes him from seeking such relief in this suit as to any related claim, *see, e.g.*, *Wright*, 2017 WL 3731957, at *7. Additionally, Grievance # 1057274 identifies only Warden Zaken, and thus any claim relating to this grievance is not properly exhausted as to the other Corrections Defendants. *See Preziosi*, 2022 WL 3586667, at *6.

---

a grievance to be properly exhausted, it must . . . not have been dismissed on procedural grounds, such as the failure to file in a timely manner or to present claims separately"), *report and recommendation adopted*, 2025 WL 2656050 (M.D. Pa. Sept. 16, 2025).

16

Based on the foregoing, Defendants have satisfied their threshold burden to produce evidence that Pierre failed to exhaust his administrative remedies for the claims alleged in this action. *See Quinones-Cedeno v. Hutchinson*, 2024 WL 1017314, at *6 (W.D. Pa. Mar. 8, 2024). This shifts the burden of production to Pierre to produce evidence demonstrating a genuine issue of material fact to support that his procedural default was somehow excused or that his administrative remedies were "unavailable." *See Green v. Maxa*, 2020 WL 1249205, at *4 n.7 (W.D. Pa. March 16, 2020). Plaintiff has produced no such evidence.

The Court of Appeals for the Third Circuit has acknowledged that, under certain narrow circumstances, the actions of prison officials may render the administrative review process unavailable to an inmate. *Rinaldi*, 904 F.3d at 266 (citing *Ross v. Blake*, 578 U.S. 632, 643–44 (2016)). Relevant here, an administrative remedy is "unavailable" when prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644 (exhaustion is not required when prison officials "threaten[] individual inmates so as to prevent their use of otherwise proper procedures"); *see Rinaldi*, 904 F.3d at 267 ("administrative remedies are not 'available' . . . where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm"); *see also Williamson v. Roberts*, 2013 WL 967693, at *4 (W.D. Pa. Mar. 12, 2013) (inmate's failure to exhaust will only be excused where "he was misled" or where "some extraordinary reason" prevented him from complying). To establish intimidation and "defeat a failure-to-exhaust defense, an inmate must

17

show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." *Rinaldi*, 904 F.3d at 269. Pierre fails to meet his burden here.

Pierre argues the prison grievance system was not available to him because prison officials interfered with his attempts to exhaust remedies. He states he "attempted to file other grievances" related to the allegations set forth in his pleading, but asserts "those attempts were thwarted by Greenawalt" and other officers' threats and abuse, including denial of food, mail tampering, and denial of grievance forms. ECF No. 55, p. 3; *see* ECF No. 55-2, pp. 1–2. Pierre further maintains he followed all grievance procedures and submission requirements, but claims Greenawalt, George, and Dick opened his outgoing mail addressed to SOIGA and removed documents. ECF No. 55, p. 4; ECF No. 55-2, pp. 2–3. He also alleges Greenawalt refused to provide him with copies of grievance documents to submit to SOIGA, contrary to DOC policy providing indigent inmates with funds for copy services and legal mail. ECF No. 55, p. 4.

These averments fail to create a triable issue of material fact regarding Pierre's claim that administrative remedies were unavailable to him. He does not detail any specific instance where corrections officials thwarted his attempts to file a grievance or appeal, nor does he point to any specific issue that he was prevented from grieving. He likewise provides no evidence in support of his bald assertion that he could not exhaust because he did not have a grievance form. On this point, Pierre himself

18

states that part of the reason he did not file additional grievances was because Defendants would not provide him with a form, not because he feared retaliation. Additionally, his contention that he was prevented from seeking administrative relief is undermined by the undisputed fact—supported by his own exhibits—that he actually filed numerous grievances at SCI-Greene and appealed many of these to final review, thus further undercutting his claim that he was actually deterred from grieving by fear of retaliation. *See Rinaldi*, 904 F.3d at 269 ("Evidence that an inmate continued to file substantially similar claims through the same grievance process . . . may be sufficiently compelling to defeat an inmate's assertion of subjective deterrence."); *see also Williamson v. Roberts*, 2013 WL 967693, at *4 (W.D. Pa. Mar. 12, 2013) ("an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed"). He further fails to identify any specific mailing that Defendants supposedly removed documents from. Moreover, Pierre's own statements are contradictory—he claims Greenawalt denied him copies of documents for his appeals to SOIGA, and also claims Defendants opened his outgoing mail to remove the same documents she allegedly refused to provide him with in the first place. As such, his allegation of mail tampering is dubious and speculative and refuted by the record documenting that he has been able to file grievances and appeals. For all of these reasons, even assuming Pierre can show a sufficiently serious threat, the Court finds that he has failed to establish that he was

actually deterred from lodging a grievance by Defendants' conduct. Consequently, Pierre has not shown that the grievance system was unavailable.[13]

In sum, Pierre has not produced evidence to support a sufficiently serious threat by Defendants that actually deterred him from exhausting his administrative remedies concerning the allegations in the complaint such that the prison grievance process was not available to him. *See, e.g., Spearman v. Morris*, 643 F. App'x 82, 85 (3d Cir. 2016) ("bare, contradictory allegations [that defendants' threats prevented inmate from properly completing exhaustion] are insufficient to create a genuine issue of material fact"). Accordingly, based on the undisputed facts and the record provided, the Court finds that no genuine issue of material fact remains for trial regarding Plaintiff's failure to exhaust his administrative remedies. Defendants are therefore entitled to judgment as a matter of law on this affirmative defense.[14]

---

[13] Furthermore, it is undisputed that Pierre filed this lawsuit—and his amended complaint—within days to weeks of the complained-of incidents—a period of time that simply would not have permitted him to fully exhaust his administrative remedies. Compliance with the PLRA "does not encompass . . . the filing of a suit before administrative exhaustion . . . has been completed." *Ahmed v. Dragovich*, 297 F.3d 201, 209 (3d Cir. 2002); *see Ball v. Beckley*, 2013 WL 6271608, at *9 (M.D. Pa. Dec. 3, 2013) ("It is axiomatic that, for inmates, full exhaustion is legal prerequisite to filing a federal civil rights lawsuit, and inmate-plaintiffs . . . may not avoid this requirement by simply commencing a grievance, and then filing a lawsuit prior to completion of the grievance process."). As such, Pierre's failure to comply with the PLRA by fully grieving the matters complained of before filing his lawsuit compels dismissal here. *See Ball*, 2013 WL 6271608, at *9; *Ahmed*, 297 F.3d at 209 (finding amendment would be futile and inmate could not cure defect because he filed suit before completing administrative exhaustion and filed his appeal late).

[14] Because the Court concludes Pierre failed to properly exhaust his claims, the Court need not consider Defendants' alternative argument that Pierre's allegations fail to state a claim for relief. *See Nyhuis v. Reno*, 204 F.3d 65, 78 (3d Cir. 2000) (a court should generally refrain from addressing the merits of a complaint where the action is properly dismissed for failure to exhaust).

## V.      Conclusion

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 46) is GRANTED.

A separate order follows.

DATED this 20th day of March, 2026.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE